**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 9, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP576-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF90

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

GAVIN M. CROSBY,

   DEFENDANT-APPELLANT.

---

APPEAL from orders of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed*.

Before Kloppenburg, Nashold, and Taylor, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1     PER CURIAM.   Gavin M. Crosby, pro se, appeals an order denying his motion for sentence modification and an order denying his subsequent motion for reconsideration.  For the reasons stated below, we affirm.

## BACKGROUND

¶2     In 2016, Crosby was charged with three counts of battery by a prisoner for assaulting three correctional officers.  Crosby pleaded no contest to one of those counts and was sentenced to four years of initial confinement and three years of extended supervision, to be served consecutively with previously imposed sentences.

¶3     In 2025, Crosby moved for sentence modification alleging the existence of two new factors.  Specifically, he argued that at the sentencing hearing, both parties believed that his release date for the previously imposed sentences was in 2026 when in fact it was in 2029, and the circuit court was unaware of the seriousness of his mental illness and that he was civilly committed as a result of the facts underlying the offense for which he was being sentenced.  In addition to the alleged new factors, Crosby discussed his rehabilitative progress while in prison.[1]

---

[1] In Crosby's motion for sentence modification, he also argued that "[t]he Defendant has a due process right to be sentenced on the basis of accurate information," and cited case law in support of that proposition.  Crosby did not, however, otherwise argue that he was entitled to resentencing because he had been sentenced based on inaccurate information, and the motion as a whole suggested a new-factor claim.  Thus, the circuit court understandably construed Crosby's motion as one based solely on a new-factor claim.  On appeal, Crosby appears to raise an argument based on inaccurate information in addition to his new-factor arguments.  Although we could consider his inaccurate-information argument forfeited, because the State does not argue forfeiture and given the ambiguous nature of his motion, we address this argument.

¶4 The circuit court denied Crosby's motion. The court stated that Crosby sought sentence modification based on his rehabilitative progress in prison, which case law holds is not a new factor. Crosby moved the court to reconsider its decision, and the court also denied that motion. The court again stated that Crosby's rehabilitative progress was not a new factor. The court also stated that Crosby's release date was only briefly mentioned at the sentencing hearing and was not a factor in the court's sentencing decision. The court similarly concluded that Crosby's mental health diagnoses were not a factor in the court's sentencing decision. The court explained that the "sentence was primarily based on the aggravated nature of the offense and the need to protect the public, taking into consideration the rehabilitative needs of Mr. Crosby."

¶5 Crosby, pro se, appeals.

## DISCUSSION

¶6 Crosby argues both that the circuit court erred when it denied his motion for sentence modification based on new factors, and that he is entitled to resentencing because the court relied on inaccurate information at sentencing. Specifically, he argues that he is entitled to either sentence modification or resentencing for two reasons: first, because at sentencing it was believed that his release date was in 2026 when in fact it was in 2029, and second, because the seriousness of his mental illness was not accurately portrayed at sentencing and the circuit court was not aware that he was civilly committed as a result of the facts underlying the crime for which he was sentenced. We conclude that the

court did not err when it denied Crosby's motion for sentence modification nor did the court rely on inaccurate information at sentencing. Accordingly, we affirm.[2]

## I. Background Law

¶7    We begin by discussing the relevant law and standards of review for sentence modification based on a new factor and for resentencing based on inaccurate information.

### A. New Factor

¶8    A circuit court may modify a defendant's sentence when the defendant has demonstrated the existence of a "new factor." *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'" *Id.*, ¶40 (quoting *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975)). "The defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor." *Id.*, ¶36. Only "if a new factor is present" must a court then "determine[] whether that new factor justifies modification of the sentence"; if a court determines that the facts do not constitute a new factor as a matter of law, the analysis ends there. *Id.*, ¶¶37, 38. "Whether a

---

[2] Although unclear, in his appellant's brief, Crosby at times appears to argue that the circuit court erroneously exercised its discretion when it denied his motion for sentence modification by failing to adequately consider Crosby's rehabilitative progress while incarcerated. However, in Crosby's reply brief, he clarifies that he raises the issue of his rehabilitative progress so that it may be considered in the event that he is entitled to resentencing or sentence modification. Thus, because we affirm, we need not address Crosby's argument related to his rehabilitative progress.

fact or set of facts presented by the defendant constitutes a 'new factor' is a question of law" that we review de novo. *Id.*, ¶33.

## B. Inaccurate Information

¶9     Due process entitles a defendant to be sentenced based on accurate information. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. "A defendant who was sentenced based on inaccurate information may request resentencing. The defendant must show by clear and convincing evidence that: (1) some information at the original sentencing was inaccurate, and (2) the circuit court actually relied on the inaccurate information at sentencing." *State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579 (citation omitted). We review de novo whether a defendant has been sentenced in violation of his due process rights. *Id.*, ¶17.

## II. Crosby's Release Date

¶10     Crosby argues that at sentencing, all of the parties believed that his release date for his prior sentences was in 2026, when in fact he was set to be released in 2029. Crosby further argues that it was "reasonably probable" that the circuit court imposed a consecutive sentence because it believed that his release date was in 2026 instead of in 2029.

¶11     Although the State disputes that Crosby has shown that the 2026 release date is inaccurate, we will assume for purposes of our analysis that Crosby is correct that his release date at the time of sentencing was in 2029 rather than in 2026. Addressing this argument under the new-factor framework, we conclude that this is not a new factor because it was not "highly relevant to the imposition of sentence." *See Harbor*, 333 Wis. 2d 53, ¶40. At the sentencing hearing, the

prosecutor stated, after going over Crosby's criminal record, that Crosby was "eligible to be released in May 2026." And Crosby's counsel similarly remarked that Crosby was going to be incarcerated until 2026. But in sentencing Crosby, the circuit court did not mention or rely on the fact that Crosby would be released in 2026. Instead, the court weighed the seriousness of the offense, the need to protect the public, and Crosby's character and rehabilitative needs, and the court determined that "the scales are tipped substantially in favor of a maximum penalty." The court sentenced Crosby "based on the nature of the assault, based on the injuries that resulted, based on [Crosby's] prior record, [and based on] the need to protect the public." Consistent with the court's determination that Crosby's release date was not a factor in the court's sentencing decision, we conclude that his release date was not highly relevant to the imposition of sentence, and is therefore not a new factor.

¶12    Similarly, addressing Crosby's argument under the framework for resentencing based on inaccurate information, we conclude that Crosby fails to show by clear and convincing evidence that the circuit court actually relied on Crosby's release date at sentencing. Accordingly, even if we assume for purposes of our analysis that Crosby's release date as stated at the sentencing hearing was not accurate, Crosby is not entitled to resentencing based on his release date.

### III. Crosby's Mental Illness

¶13     Crosby argues that the seriousness of his mental illness was not accurately portrayed at sentencing and that the circuit court was not aware that he was civilly committed as a result of the facts underlying the offense.[3]

¶14     Addressing this argument under the new-factor framework, we conclude that Crosby fails to show by clear and convincing evidence the existence of a new factor. First, he fails to show that the seriousness of his mental illness was not accurately portrayed at sentencing. At sentencing, the prosecutor stated:

> We have had some mental diagnoses done in this case in the past. I think there was a competency exam, I don't know about NGI [(not guilty by reason of insanity)], but certainly we have some mental health evaluations in this particular case.
>
> In looking at them, he has been diagnosed anti-social personality disorder. And that's consistent with his behavior.
>
> The Mayo Clinic describes this particular disorder as the type of chronic mental condition in which a person's ways of thinking, perceiving situations and relating to others are dysfunctional and destructive.
>
> People with anti-social personality disorder typically have no regard for right and wrong and often disregard the rights and wishes of others. Those with anti-social personality disorder tend to antagonize, manipulate or treat others either harshly or with callous indifference. They may often violate the law[,] landing in frequent trouble, yet they show no guilt, no remorse[.]

---

[3] In support of his arguments on appeal, Crosby relies heavily on a per curiam decision. Per curiam decisions cannot be cited as precedent or authority. *See* WIS. STAT. RULE 809.23(3). Accordingly, we do not address Crosby's arguments under this per curiam case.

Additionally, Crosby's counsel stated the following:

> Well, we have had two separate NGI evaluations and both found insufficient data to support the NGI plea. However, both reports affirm the presence of a multitude of mental and emotional disorders; unspecified schizophrenia spectrum, a psychotic disorder; adjustment disorder with anxiety, mood disorder, ADHD, post-traumatic stress disorder among others.
>
> There appears to be some disagreement among professionals as to the exact nature of Mr. Crosby's disturbances, but it seems apparent he does have serious mental health issues.
>
> In fact, I have been informed by Mr. Crosby that he has been transferred to WRC [(the Wisconsin Resource Center)] again and faces another mental health commitment hearing. That would be actually this month.
>
> It also seems that his disturbances have yet to be perfectly identified or effectively treated. And apparently these disturbances cause him to have episodes of dangerous behavior.
>
> We have accepted the findings that there is insufficient data to support the NGI plea and, of course, Mr. Crosby is unable to deny that the incident occurred. However, that does not preclude the court from considering these disturbances as mitigating factors in deciding the severity of punishment.

Crosby fails to explain how these representations regarding his mental illness were inaccurate.

¶15 Second, Crosby fails to show that the seriousness of his mental illness was highly relevant to the imposition of sentence. In fact, the circuit court specifically considered Crosby's mental illness and determined that it was not a mitigating factor. The court stated:

> I mean, there is no redeeming feature in any of the sentencing facts that I have to look at. If you consider the mental health diagnoses, you can either say, well, those mental health conditions are a contributing factor here or

> you can say the mental health diagnoses don't rise to the level of a defense by way of an NGI plea and, therefore, they really shouldn't count for much.
>
> It appears that whatever remedies we have tried up to now in dealing with Mr. Crosby and his assaultive behavior have not in any way diminished the pattern of conduct. So in my view, it boils down to considering the seriousness of the offense, the need to protect the public, the impact on the victim, it would be my hope that somehow, someplace, either in or out of prison, Mr. Crosby's mental health issues can be properly addressed, but I can't give him a pass on this in the hopes that he's going to get out and get some treatment.

The court further stated, "I wish I could say that this [sentence] is going to have some rehabilitative effect on Mr. Crosby. I hope it does. I'm not overly confident that it will, but that's only part of the formula that I have to consider." The court's statements show that Crosby's mental illness was not highly relevant to the imposition of sentence.

¶16    Third, regarding Crosby's argument that the circuit court was not aware that he was civilly committed specifically as a result of the facts underlying the offense, we observe that Crosby fails to provide any factual support for this assertion. As the State points out, the commitment records that Crosby provides do not support this assertion. And otherwise, Crosby's counsel did tell the court at sentencing that Crosby had "been transferred to WRC again and [was facing] another mental health commitment hearing." The court was thus aware that Crosby had been transferred to WRC for mental health treatment multiple times and that he was subject to another commitment hearing following the sentencing hearing. In any event, even if we assume that Crosby was committed because of the facts underlying the charge to which he pleaded guilty and that the court was not aware of that specific fact, Crosby also fails to show that this was highly relevant to the imposition of sentence. As we have already explained, the court

specifically determined that Crosby's mental health issues were not a mitigating factor, and the court did not rely on them at sentencing. In sum, we conclude that Crosby has failed to show that the seriousness of his mental illness or his asserted commitment as a result of facts underlying the crime for which he was sentenced are new factors.

¶17 We similarly reject Crosby's arguments regarding his mental illness under the framework for resentencing based on inaccurate information. Again, Crosby fails to show that any information at sentencing regarding his mental illness was inaccurate. Additionally, for the same reasons we conclude that the facts relating to his mental illness were not highly relevant to the imposition of sentence, we also conclude that the court did not rely on these facts at sentencing.

## CONCLUSION

¶18 Crosby fails to show any new factors that might entitle him to sentence modification, and Crosby similarly fails to show that the circuit court relied on inaccurate information at sentencing. Accordingly, we reject his arguments and affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.